IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Global Shredding Technologies, Ltd., L.L.C.,         Case No. 3:03CV07059

    Plaintiff,

  v.                                                                                    ORDER

Aggregates Equipment, Inc.,

    Defendant.

This is a diversity case in which plaintiff Global Shredding Technologies, Ltd., L.L.C. (Global) asserts claims against defendant Aggregates Equipment, Inc. (AEI) for breach of: contract; express warranty; implied warranty of merchantability; warranty of fitness for a particular purpose; and contract as to AmeriSteel Corporation (AmeriSteel), an intended third-party beneficiary of AEI's contract with Global.[1]

Global is an Indiana Limited Liability Company in the business of operating the metal scrap facility at issue in this litigation, located in Florida. AEI is a Pennsylvania Corporation. Jurisdiction is proper in federal court pursuant to 28 U.S.C. § 1332. Venue is proper in this District pursuant to an undisputed choice-of-forum clause contained in the contract between Global and AEI. Further, Ohio's laws likewise govern this dispute pursuant to an undisputed choice-of-law clause contained in the same contract.

Pending is Global's motion for summary judgment as to liability on all counts in its complaint. For the reasons that follow, Global's motion shall be granted in its entirety.

---

[1] It is not disputed at this stage that Global is the assignee of AmeriSteel's claims against AEI.

**Background**

On March 13, 1998, AEI accepted a contract in the form of a purchase order from Global to supply Global with certain components of a scrap metal processing system known as a shredder. The shredder, which Global was to operate for AmeriSteel pursuant to a scrap processing agreement, was designed to shred scrap automobiles and sheet scrap into useable metal feedstock for a steel producing mini-mill. AEI knew of Global's obligations to AmeriSteel.

One of the key components of the shredder was a six-story tall ferrous material separation system. This system uses two large rotating drum magnets at the top of the system to separate ferrous metals from non-ferrous materials. If the separation system is not functioning properly, the shredder will not effectively produce feedstock material.

The rotating drum magnets — the first of which is the subject of this lawsuit — separate ferrous from non-ferrous material. Inside the first drum are two electromagnets. One of the magnets, which is stronger than the other, creates a magnetic field to remove ferrous material from a conveyor feeding scrap material to the drum. The other magnet causes the extracted ferrous material to be carried over the drum and drops that material onto a separate conveyer belt. The non-ferrous material passes beneath the rotating drum magnet for separate processing.

AEI subcontracted the manufacture of the rotating drum magnets to Eriez Magnetics (Eriez)[2] because of Eriez's expertise in the manufacture of drum magnets. The rotating drum magnets were delivered to Global ready to install in the shredder.

---

[2] Eriez, not a party to this suit, was a party to a separate indemnification action brought by AEI in Pennsylvania.

As delivered, the first rotating drum magnet had the drive shaft mount installed on one side and a required adjusting arm installed on the other. In addition, the drum magnet had a directional arrow decal on the end of the drum showing the way the drum was to rotate. The way the rotating drum magnet was delivered conformed to AEI's construction drawing; Global's installer, W.W. Gay Mechanical Inc. (W.W. Gay) installed the drum as denoted by the construction drawing, location of the drive shaft mount, and directional arrows.

Nonetheless, the separation system failed to operate immediately after the shredder was erected. The machine did not separate ferrous from non-ferrous material, preventing the shredder from producing usable feedstock for AmeriSteel.

Because the problem manifested itself at the first rotating drum in the shredder, Global contacted Eriez to help diagnose and solve the problem. Eriez dispatched its local representative, Derward McKinney, to examine the rotary magnetic drums. McKinney reported that "the Drum Magnets were installed properly and what he saw looked good." McKinney recommended letting the shredder run for a few weeks and then to make adjustments. AEI was aware of the problem with the shredder.

Eriez attempted to adjust the shredder about a month later, but to no avail. AEI was aware of this unsuccessful effort to make the shredder operational

Eriez next recommended further modifications to the shredder. These changes, likewise, did not improve the shredder's production.

Two months later, with the shredder still not functioning properly, Global asked AEI to send a representative to evaluate the problems. Eriez sent Duane Wetick on behalf of AEI to Global's facility to re-examine the rotating drum magnets.

For Wetick's examination the shredder was shut down and the rotary drum magnet was removed from its six-story location so that one end plate could be removed and the internal magnets be inspected.

Once exposed, the problem was apparent: the internal magnetic coils were installed incorrectly with the weaker magnet located below the stronger one. The was the opposite of the contract specification and how the magnets had to be installed for the shredded to function properly. This flaw could be discovered only after shutting down the shredder and removing and disassembling the drum. Until then, it had not been possible to determine that Eriez had improperly assembled the rotating drum magnet, thereby causing the shredder to fail to operate as designed, intended, and anticipated. To correct this flaw, rebuilding and reinstallation of the drum magnets was necessary. Once this was done, the rotating drum magnet operated properly and the shredder worked at full capacity.

## Discussion

This case raises two primary issues: 1) is there a genuine issue of material fact as to whether AEI is responsible for the shredder's failure to function[3]; and 2) if not, does the pertinent law support plaintiff Global's motion for summary judgment as to liability.

### I. Genuine Issue of Material Fact

In support of its motion for summary judgment, Global cites to several depositions and affidavits. In response, AEI relies almost entirely on the affidavit of its president, D. Leonard Stairs, to create a genuine issue of material fact.

---

[3] AEI claims that, notwithstanding the magnet's improper initial assembly, W.W. Gay is the party responsible for the shredder's failure because that firm failed to: 1) ascertain the flaw in the magnet's assembly before it installed the rotating drum magnet in the shredder; and/or 2) install the rotating drum magnet as specified in the design drawings.

4

After a party moves for summary judgment, the burden shifts to the non-moving party to show that there is a genuine issue of material fact for submission to a jury. Fed. R. Civ. P. 56(e). Affidavits must be made on personal knowledge and must set forth admissible facts. *Id*. Affidavits may not contradict an affiant's earlier sworn testimony. *Knotts v. Black & Decker, Inc.*, 204 F. Supp. 2d 1029, 1046 (N.D. Ohio 2002) (citing *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986); *Biechele v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir. 1984)); *see also Lanier v. Bryant*, 332 F.3d 999, 1004 (6th Cir. 2003) ("When a motion for summary judgment has been filed, a party cannot create a factual issue by filing an affidavit which contradicts earlier testimony.") (citing *States ex. rel Compton v. Midwest Specialties, Inc.*, 142 F.3d 296, 303 (6th Cir. 1998); *Dotson v. United States Postal Serv.*, 977 F.2d 976, 978 (6th Cir. 1992))

Global challenges the admissibility of Stairs's affidavit on the basis that it is not made on personal knowledge and, in any event, contradicts Stairs's prior sworn testimony. Following further briefing on this issue, I conclude that Stairs's affidavit must be excluded. There is, accordingly, no genuine issue of material fact as to liability.

Stairs's affidavit does not set forth personal knowledge. In his affidavit he testifies that "no AEI personnel saw the drum magnets until after. . . the problem described in the Complaint [was] corrected." However, he then also purports to testify as to how the decal arrow on the drum magnet was not aligned as specified.

In his deposition, Stairs testified, however, that he never saw the drum. It is pure speculation on his part to assert how the arrow was aligned as he never saw the magnet.[4]

Stairs's affidavit also controverts his prior sworn testimony in a suit by AEI against Eriez for indemnification for any loss to AEI from the instant suit. He testified in the indemnification case that: Eriez improperly assembled the drum magnets; and the drums were installed correctly and in accordance with the markings on the drums and the proper rotation. In his affidavit in this action, Stairs seeks, however, to blame W.W. Gay for the improper assembly.

By having Stairs blame different companies in separate lawsuits and testimony for the flawed installation, Defendant is not simply expounding different legal theories. It is, rather, seeking to rely on different and inconsistent factual theories.

The uncontroverted evidence is that the arrow on the drum indicated the proper direction of the drum's rotation and W.W. Gay installed the drum as directed by the arrow and construction drawings. Likewise, the uncontroverted evidence is that the problem with the drum was not apparent to W.W. Gay or anyone else, absent the disassembly and inspection that finally discovered the problem. Before doing its work, W.W. Gay was not required to disassemble and inspect componenets that it had no reason to believe were defective.

I conclude that Stairs's affidavit is properly excluded in its entirety. Defendant, substantively, does not rely on any other evidence. Therefore, there is no genuine issue of material fact for a jury.

### II. Legal Basis for Finding of Liability in Favor of Plaintiff

---

[4] Stairs, in his deposition taken for this litigation, testified that the interior magnets did not match the rotation indicated on the outside of the drum and that the drum was rotating in the proper direction.

## A. Breach of Contract

To prove a breach of contract a plaintiff must show: "1) existence of the contract, 2) performance by the plaintiff, 3) breach by the defendant, and 4) damage or loss to the plaintiff." *Brock v. Lucas County Bd. of Elections*, 2003 WL 23167269, ¶13 (Ohio App. Dec. 31, 2003) (citing *Doner v. Snapp*, 98 Ohio App. 3d 597, 600 (1994)); *see also Epicentre Strategic Corp. v. Perrysburg Exempted Village School Dist.*, 2005 WL 646079, *2 (N.D. Ohio Mar. 18, 2005) (quoting *Res. Title Agency, Inc. v. Morreale Real Estate Servs.*, 314 F. Supp. 2d 763, 769 (N.D. Ohio 2004) (citing *Samadder v. DMF of Ohio, Inc.*, 154 Ohio App. 3d 770, 778 (2003))). If a party fails to perform a contractual duty, it is in breach. *Kotyk v. Rebovich*, 87 Ohio App. 3d 116, 121 (1993) (citing Restatement of the Law 2d, Contracts, §235(2) (1978)).

It is uncontroverted that Global and AEI entered into a contract by way of a purchase order issued by Global and accepted by AEI and likewise uncontroverted that Global satisfied its obligations to AEI under the purchase order by making full payment to AEI.

The purchase order required AEI to build and furnish the components of the shredder, including the rotating drum magnet which is the subject of this lawsuit. The purchase order further required AEI to build the magnet pursuant to the drawings and specifications that were agreed upon by Global and AEI. Instead of building the rotating drum magnet itself, AEI subcontracted its manufacture to Eriez.

However, the rotating drum magnet, as assembled and supplied to Global pursuant to the contract between Global and AEI, did not function properly, such that the shredder was not functional. Further, it is uncontroverted that Global suffered damages as a result.

AEI's failure to provide the working drum magnet to Global as required under the purchase order constitutes a breach of that contract by AEI. Summary judgment in Global's favor as to its breach of contract claim against AEI is appropriate.

### B. Breach of Express Warranties

A "warranty is an assurance by one party to a contract of the existence of a fact upon which the other party may rely. . . it amounts to a promise to indemnify the promisee for any loss if the fact warranted proves untrue. . . ." *Norcold v.Gateway Supply Co.*, 154 Ohio App. 3d 594, 602 (2003).

There is no dispute that the purchase order contracted for goods, rather than services. Revised Code § 1302.26 governs express warranties in a contract for the sale of goods:

(A) Express warranties by the seller are created as follows:

(1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

Affirmations in a buyer's purchase order creates an express warranty once the seller accepts the order. *Chemtrol Adhesives, Inc. v. American Mfrs. Mut. Ins. Co.*, 42 Ohio St. 3d 40, 47 (1989); *TLT-Babcock, Inc. v. Service Bolt & Nut Co.*, 16 Ohio App. 3d 142, 143 (1984).

The purchase order, "warrant[ed] that the [drum magnet]. . . will conform to the specifications, drawings. . . furnished by [Global], will be fit an sufficient for its intended purpose, will function properly and be free from defects in material and workmanship." (Purchase Order, "Terms and Conditions" ¶ 4).

By accepting and undertaking to fulfill Global's purchase order, AEI expressly warranted that the components of the shredder would be free from defects and comply with the order's specifications. Contrary to this promise, AEI did not provide the rotating drum magnet to Global in working order. It likewise was not fit for its intended purpose. Therefore, Global is entitled to summary judgment on its breach of express warranty claim.

### C. Implied Warranty of Merchantability/Fitness for Ordinary Purpose

Under O.R.C. § 1302.77, "[u]nless it is excluded or modified, a warranty that goods sold are merchantable arises by operation of law in every contract for their sale where the seller is a 'merchant' who deals in goods of the kind sold." *Allis-Chalmers Credit Corp. v. Herbolt*, 17 Ohio App. 3d 230, 233 (1984) (emphasis in original excluded). "Merchant" is defined as "a person who deals in goods of the kind or otherwise by the person's occupation holds the person out as having knowledge or skill peculiar to the practices or goods involved in the transaction. . .." O.R.C. § 1302.01(5).

AEI is a "merchant" under this definition: AEI is in the business of designing, manufacturing, and selling material handling equipment including the shredder at issue in this suit.

Nothing in the purchase order excluded or modified any implied warranties. On the contrary, the order specifically allowed Global to pursue any and all warranty claims available at law against AEI. (Purchase Order, "Terms and Conditions" ¶ 4).

The implied warranty of merchantability contained in O.R.C. § 1302.27 requires that goods: "(1) pass without objection in the trade under the contract description; and. . . (3) are fit for the ordinary purposes for which such goods are used."

9

The magnets inside the drum were installed incorrectly; this defect prevented the shredder from functioning properly. This drum magnet, accordingly, would not pass without objection in the trade under the contract description as the magnet did not conform to the description and did not function properly. Further, the rotating drum magnet was not fit for its ordinary purpose — separation of ferrous metal from non-ferrous material. Summary judgment in Global's favor on its breach of implied warranty of merchantability/fitness for the ordinary purpose claim against AEI is proper.

### D. Implied Warranty of Fitness for a Particular Purpose

Ohio Revised Code § 1302.28 governs implied warranties of fitness for a particular purpose:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified. . . an implied warranty that the goods shall be fit for such purpose.

There are three requirements to the creation of an implied warranty of fitness for a particular purpose: (1) "the seller must have reason to know the buyer's particular purpose"; and (2) the seller must have "reason to know that the buyer is relying on the seller's skill or judgment to select appropriate goods"; and (3) "the buyer must in fact rely on the seller's skill or judgment." *Evilsizor v. Becraft & Sons Gen. Contrs. Ltd.*, 156 Ohio App. 3d 474, 478 (2004) (citing *Delorise Brown, M.D., Inc. v. Allio*, 86 Ohio App. 3d 359 (1993)).

My analysis of this three-part test is purely a factual one: namely, do the facts support a finding that the transaction created the warranty.

Global has presented sufficient, uncontroverted evidence to show that: AEI knew what Global's particular purpose was; AEI knew that Global would look to AEI's expertise in manufacturing and

10

providing the components; and Global relied on AEI's expertise when it placed the order and accepted the components. This created an implied warranty of fitness for a particular purpose.

AEI breached this warranty when it failed to deliver a working rotating drum magnet able properly to separate ferrous from non-ferrous material as needed and specified by Global. Global is entitled to summary judgment on its claim of breach of an implied warranty of fitness for a particular purpose.

### E. Third Party Liability

AmeriSteel has assigned any rights it may have had under the contract between Global and AEI to Global. As assignee, Global asserts a right to recover under that contract.

When a third party is intended by a promisee to benefit from the promisor's performance under a contract, the third party is an intended beneficiary with enforceable rights under the contract. *Hill v. Sonitrol*, 36 Ohio St. 3d 36, 40 (1988). Determination of whether a third party is an intended beneficiary or an incidental beneficiary with no enforceable contract rights requires ascertaining "if the promisee intend[ed] that [the] third party should benefit from the contract." *Id*. (citing *Norfolk & Western Co. v. United States*, 641 F.2d 1201, 1208 (6th Cir. 1980)).

This test requires the promisee to show that it "intended to directly benefit a third party, and not simply that some incidental benefit was conferred on an unrelated party by the promisee's actions under the contract. There must be evidence that the promisee assumed a duty to the third party." *Trinova v. Pilkington Bros., P.L.C.*, 70 Ohio St. 3d 271, 277–78 (1994) (citing *Norfolk & Western*, 641 F.2d at 1201).

Global has presented sufficient and uncontroverted evidence to establish that AmeriSteel was an intended beneficiary of the contract between AEI and Global. The purpose of the contract was for Global

11

to erect and operate its shredder for AmeriSteel's benefit: everything literally flowed one way into AmeriSteel's mini-mill.

AEI knew that Global would be operating the shredder for AmeriSteel pursuant to a contract between Global and AmeriSteel. Therefore, AmeriSteel was an intended beneficiary of the Global/AEI contract with consequent enforceable rights under that contract.

Having acquired those rights by assignment from AmeriSteel, Global is entitled summary judgment as to any claims that arose in favor of AmeriSteel as a result of the failure of the shredder to operate as anticipated by all everyone involved.

### F. AEI's Defense

AEI does not claim that it did not, in fact, breach its contract with Global or breach the warranties made to Global. Instead, and without much discussion or citation,[5] AEI contends that summary judgment is not properly entered on Global's claims of breach of contract or breach of warranty because Global cannot show causation.

Notwithstanding Global's assertion to the contrary, causation is an element necessary to prevail in a breach of contract claim. *Nalls v. Nystrom*, 159 Ohio App. 3d 200, 206 n.1 (2004); *see also Moss v. Sibley*, 1999 WL 115050, *2 (Ohio App. Mar. 5, 1999) (a party must show proximate causation to recover in breach of contract). Likewise, causation is an element necessary to prevail in a breach of

---

[5] Besides restating the standard of review, with citations, on summary judgment, AEI limits its citations to Comment 13 to O.R.C. § 1302.27 and *Fender v. Colonial Stores, Inc.*, 225 S.E.2d 691 (Georgia App. 1976).

warranty claim. *Williams v. Constr. Managers of Ohio Inc.*, 1990 WL 205070, *2 (Ohio App. Dec. 12, 1990) (citing *Westinghouse Elec. Corp. v. Dolly Madison Corp.*, 42 Ohio St. 2d 122 (1975)).

AEI contends that W.W. Gay's failure to discover that the drum magnets were internally assembled incorrectly is the actual reason Global suffered damages. However, as stated *supra*, AEI rests this contention entirely on inadmissable evidence; further, AEI has produced evidence in previous litigation that the cause of damage to Global was due to Eriez, and that W.W. Gay installed the drum correctly. AEI, moreover, has not shown any basis for concluding that W.W. Gay had an obligation under contract or otherwise to disassemble the unit as tendered to it for installation.

AEI has not raised a genuine issue of material fact as to the cause of the shredder's nonperformance: namely, improper installation of the magnets. Thus, Global is entitled to summary judgment on the issue of causation.

**Conclusion**

In light of the foregoing, it is

ORDERED THAT:

1. Plaintiff Global's motion for summary judgment as to liability only on all counts be, and the same hereby is, granted;

2. Plaintiff Global's motion for a declaration that AmeriSteel was an intended third-party beneficiary with enforceable rights, which it assigned to Global be, and the same hereby is, granted. So ordered.

/s/James G. Carr
James G. Carr

Chief Judge